UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JORGE MENDOZA, CARLA GOMES, CHRISTIAN SILVESTRI, and PATRICK MENDOZA, | * * * * | |
| Plaintiffs, | * * | Civil Action No. 1:22-cv-10710-IT |
| v. | * * | |
| MICHELLE WU, in her official capacity as Mayor of the City of Boston, | * * * | |
| Defendant. | | |

MEMORANDUM & ORDER

October 18, 2022

TALWANI, D.J.

Plaintiffs Jorge Mendoza, Carla Gomes, Christian Silvestri, and Patrick Mendoza bring this action against Defendant Michelle Wu in her official capacity as Mayor of the City of Boston. In their Complaint [Doc. No. 1], Plaintiffs allege that fees assessed by the City of Boston for outdoor dining licenses were unconstitutional and in violation of Massachusetts law. Now pending before the court is Defendant's Motion to Dismiss [Doc. No. 7] the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons that follow, Defendant's Motion to Dismiss [Doc. No. 7] is GRANTED pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## I.      Factual Background

Plaintiffs allege that they own restaurants located in the City of Boston's North End neighborhood. Compl. ¶¶ 9, 11, 14, 16 [Doc. No. 1]. At oral argument, Plaintiffs' counsel acknowledged that these restaurants are incorporated as Massachusetts corporations.

Before May 1, 2022, Mayor Wu, by and through her agents in the City of Boston, issued an order requiring North End restaurants to apply for a license if they sought to have outdoor dining for the summer of 2022. Id. at ¶¶ 7-8. Plaintiffs allege that the order contained certain requirements, including a one-time $7,500 fee and a $480 per month fee assessed for every parking space a restaurant utilized for outdoor dining, and that these fees were not required for restaurants in other parts of the City that sought outdoor dining licenses for the 2022 summer season. Id.

Plaintiffs allege further that City of Boston officials formed a committee of certain owners of Boston restaurants to discuss how outdoor dining would proceed for the 2022 season and that City officials never mentioned fees of this nature before that committee. Id. at ¶ 18. The announcement of such fees was first made during a Zoom meeting with the affected North End restaurants. Id. at ¶ 19. According to the Complaint [Doc. No. 1], Plaintiffs, along with other North End restaurant owners, went to a meeting at City Hall to protest the fees but were barred from attending the meeting—although restaurant owners who did not oppose the fees were allowed to attend. Id. at ¶¶ 20-21.

Plaintiffs allege that in addition to the fees imposed, the City's order directed at North End restaurants established a later start and earlier end date for outdoor dining in the North End compared to other parts of the City. Id. at ¶ 22. Plaintiffs allege that this resulted in "approximately two[] months less of outdoor dining than that of their competition in other parts of the City." Id.

The North End and its restaurants are a popular tourist attraction for people visiting the City of Boston from around the United States and the world. Id. at ¶ 24. Plaintiffs allege that if their restaurants refused to pay the fees, they would not be allowed to have outdoor dining space;

and without outdoor dining, they would not be able to compete with other North End restaurants catering to tourists. Id. at ¶ 25.

## II.     Standard of Review

A challenge to the court's subject matter jurisdiction must generally be addressed before reaching the merits of a case. See Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case"). A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id.

Standing doctrine derives from Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. Art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). To have standing "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560-61). Injury in fact requires a showing of "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. "The particularization element of the injury-in-fact inquiry reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the persons injured

by that conduct." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731-32 (1st Cir. 2016). The

party seeking to invoke the court's jurisdiction must have "a 'personal stake in the outcome' of

the claim asserted." Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006) (quoting Baker v. Carr,

369 U.S. 186, 204 (1962)).

"The standing inquiry is claim-specific: a plaintiff must have standing to bring each and

every claim that she asserts." Katz, 672 F.3d at 71 (citing Pagán, 448 F.3d at 26). And where the

question of standing is based on the pleadings, "the plaintiff bears the burden of establishing

sufficient factual matter to plausibly demonstrate his standing to bring the action." Hochendoner,

823 F.3d at 731.

### III.     Discussion

#### A.   Counts 1 – 3

Wu argues dismissal of courts 1 – 3 of the Complaint [Doc. No. 1] is warranted where

Plaintiffs lack Article III standing because the purported injuries alleged in these counts were

incurred by the restaurants, and not by the Plaintiff owners. In Count 1, Plaintiffs allege that

Wu's unilateral decision to charge North End restaurants a fee for the continued right to offer

outdoor dining—and subsequent lack of process for those impacted to challenge the decision—

violated the Due Process Clause of the United States Constitution. In Count 2, Plaintiffs allege

that by imposing outdoor dining fees on North End restaurants and not other similarly situated

restaurants in the City of Boston, Wu violated the Equal Protection Clause of the United States

Constitution. And in Count 3 Plaintiffs allege that by requiring North End restaurants pay a fee

for the right to offer outdoor dining, Wu violated the Commerce Clause of the United States

Constitution. Based on these allegations, Wu contends that "Plaintiffs do not allege any injuries

that are not derivative of these purported 'injuries' to their restaurants." Mem. in Supp. 5 [Doc. No. 8].

Plaintiffs respond that they have standing because, as the owners, they have a personal stake in the success of their restaurants.[1] But even accepting that they have a personal stake in their restaurants' success, this stake does not amount to an injury to their "<u>own</u> legal rights (as opposed to those of a third party)," namely, the corporate entities through which the restaurants are held. <u>Pagán</u>, 448 F.3d at 27 (emphasis added). "[A] corporate shareholder (even a sole shareholder) may not sue in his own name to redress injuries suffered solely by the corporation." <u>Gianfrancesco v. Town of Wrentham</u>, 712 F.3d 634, 637 (1st Cir. 2013) (citing 13A Charles Alan Wright et al., <u>Federal Practice & Procedure</u> § 3531.9.2, at 704 (3d ed. 2008)).

Accordingly, where the alleged injuries were to the restaurants, which are incorporated as separate legal entities, Plaintiffs lack standing to bring their constitutional claims, and Counts 1 – 3 are therefore dismissed for lack of subject matter jurisdiction.

B.  <u>Count 4</u>

Defendant moves to dismiss Count 4**,** a claim for violation of Massachusetts Gen. L. ch. 93A**,** for failure to state a claim. But before addressing that claim, the court considers its jurisdiction.

Plaintiffs contend that the court has supplemental jurisdiction to hear this claim based on the related federal claims brought as Counts 1 – 3. However, where the court has concluded that

---

[1] For example, while the complaint alleges that Plaintiffs paid the fees as required by the City's order, <u>see</u> <u>id.</u> at ¶¶ 10, 12, 15, 17, Plaintiffs' <u>Opposition</u> states that the licensing fees "literally came out of their own pockets, because all profits and losses of their restaurants directly affect their own income and losses and, in fact, is their source of income." Pl.'s Opp'n 7-8 [Doc. No. 16].

Plaintiffs lack standing to bring Counts 1 – 3, the court lacks subject matter jurisdiction to hear Count 4 independently. Accordingly, as a stand-alone state law claim, Count 4 is dismissed for lack of subject matter jurisdiction.

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 7] is GRANTED. Any motion seeking leave to amend the complaint must be filed no later than November 1, 2022.

IT IS SO ORDERED.

October 18, 2022                                      /s/ Indira Talwani
                                                     United States District Judge