## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**JORGE MENDOZA-ITURRALDE,**
**individually and as owner and President of**
**MONICA'S, INC.;**

**MONICA'S, INC.;**

**CARLA GOMES, individually, and as**
**owner and President of TERRAMIA, INC.**
**and ANTICO FORNO, INC.;**

**TERRAMIA, INC.;**

**ANTICO FORNO, INC.;**

**JASON SILVESTRI, individually and as**
**principal owner and President of DOLCE**
**FUMA RESTAURANT GROUP CORP.;**

**DOLCE FUMA RESTAURANT GROUP**
**CORP.;**

**PATRICK MENDOZA, doing business as**
**MONICA'S TRATTORIA on Prince;**

        **Plaintiffs,**

**v.**

**MICHELLE WU, in her capacity as Mayor**
**of the City of Boston,**
        **Defendant.**

**C.A. No. 1:22-CV-10710**

<u>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO**</u>
<u>**DISMISS PLAINTIFFS' AMENDED COMPLAINT**</u>

## TABLE OF CASES

Acosta-Ramirez v. Banco Popular de  P.R., 712 F.3d 14 (1st Cir. 2013)............................ 7, 9, 11

All Seasons Servs., Inc. v. Commissioner of Health and Hospitals of Boston

416 Mass. 269 (1993) ................................................................................................ 27, 28

Am. Motorists Ins. Co. v. Starnes 425 U.S. 637 (1976) .................................................... 12

Anthony's Pier Four v. HBC Associates 411 Mass.451 (1991).................................................. 29

Arbaugh v. Y&H Corp. 546 U.S. 500 (2006)................................................................................ 9

Baker v. Carr, 369 U.S. 186 (1962) .............................................................................................. 9

Bass River Golf Mgmt., 92 Mass. App. Ct. 595 (2018) .............................................................. 27

Bd. of Regents of State Colls. v. Roth, 408 U.S. 564 (1972) ...................................................... 23

Bi-Metallic Investment Co. v. State Board of Equalization, 239 U.S. 441 (1915)...................... 24

Boston Hous. Authy. v. Howard, 427 Mass. 537 (1998)............................................................. 27

Bretton v. State Lottery Commn., 41 Mass. App. Ct. 736 (1996) ............................................... 28

Brictson v. Woodrough, 164 F.2d 107 (8th Cir. 1947)................................................................. 9

Buchanan v. Maine, 469 F.3d 158 (1st Cir. 2006)....................................................................... 16

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001)................................................ 13

City of Beverly v. Bass River Golf Mgmt., Inc., 92 Mass. App. Ct. 595 (2018) ........................ 26

City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432 (1985) .................................. 11, 13

City of New Orleans v. Dukes, 427 U.S. 297 (1976) ............................................................ 12, 17

City of Revere v. Boston/Logan Airport Associates,  LLC.,

443 F.  Supp.  2d  121 (D. Mass.  2006) ..................................................................... 28

Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24 (1st Cir. 2000) .................. 5

Clubside v. Valentin, 467 F.3d 144 (2d Cir. 2006)....................................................................... 15

Cotter v. City of Boston, 323 F.3d 160 (1st Cir. 2003) ................................................................. 9

Cream of Wheat Co. v. Grand Forks Cnty., N.D., 253 U.S. 325 (1920) ..................................... 13

Dandridge v. Williams, 397 U.S. 471 (1970) .............................................................................. 19

Diva's Inc. v. City of Bangor, 411 F.3d 30 (1st Cir. 2005) ........................................................... 9

Donahue v. City of Boston, 304 F.3d 110 (1st Cir. 2002) ............................................................. 7

F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993)..................................................... 17

Fothergill v. United States, 566 F.3d 248 (1st Cir. 2009)............................................................. 7

Freeman v. Town of Hudson, 714 F.3d 29 (1st Cir. 2013)............................................................ 5

Gallo v. U.S. Dist. Ct. for the Dist. of Arizona, 349 F.3d 1168 (9th Cir. 2003) ......................... 24

García-Catalán v. United States, 734 F.3d 100 (1st Cir. 2013) .................................................. 7

Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81 (1st Cir. 2014) ............................................. 23

Gianfrancesco v. Town of Wrentham, 712 F.3d 634 (1st Cir. 2013) ...................................... 16

González-Droz v. González-Colón, 660 F.3d 1 (1st Cir. 2011) ............................................. 20

Gonzalez-Fuentes v. Molina, 607 F.3d 864 (1st Cir. 2010) ................................................... 20

Harron v. Town of Franklin, 660 F.3d 531 (1st Cir. 2011) .............................................. 20, 22

Hodel v. Indiana, 452 U.S. 314 (1981) ................................................................................. 16

Katz v. Pershing, LLC, 672 F.3d 64 (1st Cir. 2012) .............................................................. 7

Kentucky v. Graham, 473 U.S. 159 (1985) ............................................................................ 8

Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42 (1st Cir. 2003) ............................................ 18

Legacy Church, Inc. v. Kunkel, 472 F. Supp. 3d 926 (D.N.M. 2020) .................................... 5

Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356 (1973) ......................................... 12

M. O'Connor Contracting, Inc. v. Brockton, 61 Mass. App. Ct. 278 (2004) ..................... 27, 28

Maine v. Taylor, 477 U.S. 131 (1986) ................................................................................. 25

Max-Planck-Gesellschaft Zur Foerderung Der Wissenschaften E.V. v. Whitehead Inst. for
Biomedical Rsch., 850 F. Supp. 2d 317 (D. Mass. 2011) ...................................................... 29

Medeiros v. Vincent, 431 F.3d 25 (1st Cir. 2005) ........................................................... 17, 21

Metro. Life Ins. Co. v. Ward, 470 U.S. 869 (1985) .............................................................. 12

Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271 (1984) ..................... 24

Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971 (1st Cir. 1989) ...................................... 17, 22

Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99 (1st Cir. 2015) ...................................... 21

Nordlinger v. Hahn, 505 U.S. 1 (1992) ................................................................................ 12

Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1 (1st Cir. 2011) .......................................... 8

Pagán v. Calderón, 448 F.3d 16 (1st Cir. 2006) ......................................................... 9, 10, 20

Park Drive Towing, Inc. v. Revere, 442 Mass. 80 (2004) .......................................... 26, 27, 28

Pearson v. Fair, 935 F.2d 401 (1st Cir. 1991) ...................................................................... 22

Pignato v. Dein Host, Inc., 835 F.2d 402 (1st Cir. 1987) ................................................... 9, 10

Plyler v. Doe, 457 U.S. 202 (1982) ...................................................................................... 13

Progressive Credit Union v. City of New York, 889 F.3d 40 (2d Cir. 2018). ............................ 15

Residents for Sane Trash Solutions, Inc. v. U.S. ACE,
31 F. Supp. 3d 571 (S.D.N.Y. 2014) .................................................................................. 17

Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1 (1st Cir. 2013) .................................... 16

RR Vill. Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197 (2d Cir. 1987) ............................ 24

iii

San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1 (1973) .................................... 13

Schatz v. Republican State Leadership Comm., 669 F.3d 50 (1st Cir. 2012) ................. 7, 8

Two Guys From Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582 (1961)........................... 19

U.S. R.R. Retirement Board v. Fritz, 449 U.S. 166 (1980) ........................................... 18

United States v. Fla. E. Coast Ry. Co., 410 U.S. 224 (1973) ....................................... 24

United States v. Salerno, 481 U.S. 739 (1987) .................................................... 20

Viqueira v. First Bank, 140 F.3d 12 (1st Cir. 1998) .................................................. 7

W. & S. Life Ins. Co. v. State Bd. of Equalization of California,

451 U.S. 648 (1981).............................................................................. 12

Walsh v. Commonwealth of Massachusetts, 618 F.2d 156 (1st Cir. 1980)................................ 17

Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854 (1986) ........................ 29

Washington v. Glucksberg, 521 U.S. 702 (1997) ................................................... 21

Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85 (1979) ................................. 29

Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483 (1955) ......................... 19

## <u>TABLE OF AUTHORITIES</u>

**Statutes**

Chapter 42, Section 27 of the Acts of 2022 ................................................................. 5

M.G.L. c. 93A ................................................................................................ 26, 27

M.G.L.c. 155, § 51 ............................................................................................ 10

M.G.L. c. 156B, § 102 ........................................................................................ 10

U.S. Const. amend. XIV .................................................................................... 11

U.S. Const. amend. XIV § 1 ............................................................................... 20

**Other Authorities**

COVID Order No. 35 ......................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 7

Fed. R. Evid. 201 .............................................................................................. 5

## I.   FACTS

On March 10, 2020, Governor Charles D. Baker issued COVID Order No. 35 which in part allowed local licensing authorities to approve the extension of a licensed premises to include outdoor dining without a hearing before the local licensing board or review by the Alcoholic Beverages Control Commission.[1]  The order further provided that the mayor, select board or chief executive of a municipality shall establish the process for approving such requests. The expedited licensing process established under the order remains in effect until April 1, 2023 pursuant to Section 19 of Chapter 20 of the Acts of 2021 as amended by Chapter Section 27 of Chapter 42 of the Acts of 2022.[2]

For the 2022 outdoor dining season, Mayor Wu and the City of Boston (hereinafter, "the City") utilized the expedited licensing process described above to grant temporary extensions of licensed premises outdoors within the public right of way.  See Plaintiffs' Amended Complaint (hereinafter "Pl. Comp.") ¶¶ 10-11.  Specific to restaurants located in the North End neighborhood of Boston during the 2022 outdoor dining season, the City instituted certain requirements, including a fee and the provision of replacement parking, as part of the process

---

[1] This Court may consider the order on a motion to dismiss because it is "integral to or explicitly relied upon in the complaint, though not attached to the complaint." Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000). Additionally, the Order at issue is a "matter of public record" that is subject to judicial notice under Fed. R. Evid. 201. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) Throughout the COVID-19 pandemic, "[c]ourts presiding over similar cases have taken judicial notice of Public Health Orders and scientific consensus regarding the coronavirus." Legacy Church, Inc. v. Kunkel, 472 F. Supp. 3d 926, 1066-67 (D.N.M. 2020).

[2] The City clarifies that the Governor's Order, as extended by Section 19 of Chapter 20 of the Acts of 2021 as amended by Chapter Section 27 of Chapter 42 of the Acts of 2022, and the City's licensing scheme that is at issue in this case, apply only to the operation of restaurants outside of areas for which they have obtained licenses to operate pursuant to the normal state-created licensing scheme under other, non-temporary provisions of the General Laws. The temporary licensing structure at issue in this case exclusively concerns the opportunity to operate a privately-owned restaurant, including the selling of alcohol, on public streets and sidewalks for which the private business possesses no other license or permit.

for the approval of the extension of a licensed premises to include outdoor dining within the public right of way. Id. at ¶ 17. Restaurants located in the North End that desired to increase capacity and extend their premises onto the public right of way were required to pay a licensing fee that could amount to a maximum of $7,500 as well as a $480 payment to be made to a North End parking garage for parking spaces to replace each parking space or portion thereof lost to restaurant tables occupying the public right of way.  Id. ¶¶ 17-18.   The City also determined that the 2022 outdoor dining season for North End restaurants would run for a five-month period of time, rather than a nine-month period of time for restaurants located outside of the North End. Id. at ¶¶ 21; 57.  Additionally, for the 2022 season, the City did not require a licensing fee or replacement parking spot costs for restaurants seeking temporary license extensions into the public right of way in other parts of Boston.  Id. at ¶¶ 18; 20.  In all parts of Boston, participation in the on-street seating program is voluntary.

Each of the individual plaintiffs own restaurants in the North End neighborhood.  Id. at ¶¶ 33-52. Each of the restaurants are corporations, which are duly incorporated in the Commonwealth of Massachusetts. Id.  All of the restaurants named in this case took part in the on-street seating program in the 2022 season in the North End neighborhood.  Id.  As a result, each Plaintiff paid the $7,500 licensing fee or enrolled in the payment program.  Id.  Each Plaintiff also paid for parking spaces eliminated from the public right of way by their outdoor dining tables.  Id.

In this lawsuit, the Plaintiffs seek to create constitutional violations based on the allegation that the Mayor acted inappropriately in the context "that the traditional owner of a restaurant in the North End of Boston is a white male of Italian descent."  Id. at ¶ 24. As set out below, this unsupported assertion,[3] and the facts that the Mayor advocated for promotion of greater inclusion

---

[3] Notably, one of the plaintiffs in this case, Carla Gomes, identifies as a female, Id. at ¶ 3.

for all of Boston's residents and referenced "White" residents in a one-liner at the South Boston

St. Patrick's Day breakfast, cannot create Constitutional barriers to the City's ability to put in place

reasonable constraints on local restaurants regulating congestion, noise, and excess trash in one of

the most crowded and compact neighborhoods in Boston.

## II.    STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1) Permits Dismissal due to a Lack of Constitutional Standing.

A motion to dismiss for lack of constitutional standing is a challenge to the court's subject

matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  See Katz v. Pershing, LLC, 672 F.3d 64,

70 (1st Cir. 2012). The party asserting federal jurisdiction has the burden of demonstrating its

existence.  See Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  Dismissal is appropriate

when the facts alleged in the complaint, taken as true and given all reasonable inferences, do not

support a finding of federal subject matter jurisdiction.  See Fothergill v. United States, 566 F.3d

248, 251 (1st Cir. 2009). A challenge to the court's subject matter jurisdiction should ordinarily

be addressed before addressing the merits of the case.   See Acosta-Ramirez v. Banco Popular de

P.R., 712 F.3d 14, 18 (1st Cir. 2013) (citing Donahue v. City of Boston, 304 F.3d 110, 117 (1st

Cir. 2002)).

### B.    Fed. R. Civ. P. 12(b)(6) Permits Dismissal for a Failure to State a Claim Upon Which Relief May be Granted.

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly

narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55

(1st Cir. 2012). Reading the complaint "as a whole," the Court must conduct a two-step, context-

specific inquiry.  See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First,

the Court must perform a close reading of the claim to distinguish the factual allegations from

the conclusory legal allegations. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.   Id. Second, the Court must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief."   Schatz, 669 F.3d at 55.   If they do not, then dismissal is warranted. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

## III.    ARGUMENT

The Plaintiffs' Complaint asserts four claims against Mayor Wu in her official capacity as the Mayor of the City of Boston. The claims against Mayor Wu in her official capacity are the equivalent of claims against the City and should be dismissed for the reasons described below. See Kentucky v. Graham, 473 U.S. 159, 165 (1985).

### A.    The Plaintiffs Do Not Have Standing to Bring Counts 1, 2, and 3, as Individuals and thus, Counts 1, 2, and 3 Must be Dismissed as to the Individual Plaintiffs.

"Article III of the Constitution confines the federal courts to deciding actual cases or controversies." Cotter v. City of Boston, 323 F.3d 160, 166 (1st Cir. 2003).  In order to establish Article III standing, a plaintiff must have a "personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 204 (1962).  "Actions to enforce corporate rights or redress injuries to [a] corporation cannot be maintained by a stockholder in his own name…even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock." Pignato v. Dein Host, Inc., 835 F.2d 402, 406 (1st Cir. 1987) (quoting Brictson v. Woodrough, 164 F.2d 107, 109 (8th Cir. 1947)).

Moreover, this standing rule applies even where there is only one shareholder in a corporation. Id.  The First Circuit has found that this standing requirement applies to actions brought to redress injuries to a corporation under Section 1983. See Diva's Inc. v. City of Bangor,

411 F.3d 30, 42 (1st Cir. 2005) (dismissing plaintiffs' constitutional claims on standing grounds because they did not allege any injury separate from their business' alleged injuries); see also Pagán v. Calderón, 448 F.3d 16, 29-30 (1st Cir. 2006) (underscoring that individuals do not have Article III standing, even if they allege emotional distress, if those injuries are simply derivative of a corporation's injuries).

Standing is a subject-matter jurisdiction issue, separate and apart from the merits of the case. See generally Arbaugh v. Y&H Corp., 546 U.S. 500 (2006). To determine whether or not an individual plaintiff has standing, a court may consider "whatever evidence has been submitted in the case." Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013).

In the instant case, the Plaintiffs amended their complaint to include their respective corporations as parties. Pl. Comp. ¶¶ 1-8. However, the Plaintiffs' action of simply adding the corporate entities does not create Article III standing for them as individuals. The Amended Complaint still fails to address the underlying issue regarding individual standing as all of the alleged injuries enumerated in the Amended Complaint are derivative of the alleged injuries to the corporations. See Pagán 448 F.3d at 29-30. Specifically, regarding Mendoza-Iturralde, Gomes, and Silvestri as individual plaintiffs, the Amended Complaint does not include any additional facts from which this Court can intuit injuries separate and apart from that of the corporate entities to which these Plaintiffs are connected. See generally Pignato, 835 F.2d 402. Even if each of these parties are the only stockholder or make all decisions regarding ownership of their respective corporations, the injuries asserted here are not particular to the Plaintiffs as individuals, but result directly from injuries to the corporations themselves. See Pagán 448 F.3d at 29-30. Indeed, the only calculable injury remains the $7,500 fee for each restaurant and the associated parking space fees. See Pl. Comp. ¶¶ 17-18; 33-52. Accordingly, Mendoza-Iturralde, Gomes, and Silvestri do

not have standing as individual Plaintiffs.  Thus, Counts 1, 2, and 3 should be dismissed as to these Plaintiffs as individuals.[4]

Second, Patrick Mendoza asserted in the Amended Complaint that he "owns and does business as Monica's Trattoria, located at 67 Prince Street."  Pl. Comp ¶ 49.  The implication of this claim is that Monica's Trattoria is not a separate corporate entity apart from Mendoza himself. Compare Pagán 448 F.3d at 29-30.   However, the additional evidence that this Court may properly consider under the case law, shows that this claim holds no water.  See Acosta-Ramirez, 712 F.3d at 18.  Rather, the Secretary of the Commonwealth, Corporations Division's website shows that Monica's Trattoria on Prince is an incorporated business.  Secretary of the Commonwealth, Corporations Division's Website, Last Visited on December 19, 2022, hereto attached as Exhibit A.[5]  Patrick Mendoza is listed as the President of Monica's Trattoria on Prince, Inc. Id. The same entity, "Monica's Trattoria on Prince, Inc." also recently applied for a renewal of the liquor license before the City of Boston's Licensing Board.   The Licensing Board for the City of Boston's Renewal Application, hereto attached as Exhibit B.  Patrick Mendoza is listed as the manager of the establishment.  Id.  This documentation demonstrates that Patrick Mendoza is not doing business as Monica's Trattoria on Prince, but instead shows that Monica's Trattoria on Prince is a separate, corporate entity that must be enumerated as its own party to be a plaintiff in this lawsuit. Thus, Patrick Mendoza, doing business as Monica's Trattoria on Prince, remains an individual

---

[4] Importantly, Monica's Inc. and Dolce Fumo Restaurant Group Corp. both were dissolved on December 31, 2021, prior to the 2022 dining season. See Secretary of State Corporate Database Website, last accessed on January 3, 2023, hereto attached as Exhibit C and Exhibit D respectively.  Although Mass. Gen. Laws Ann. c. 155, § 51 and Mass. Gen. Laws Ann. c. 156B, § 102  permit a three-year period post-dissolution for prosecuting cases brought by the corporation, the corporation may not remain operational "for the purpose of continuing the business for which it was established."  As the 2022 dining season at issue occurred after the dissolution of Monica's Inc., and Dolce Fumo Restaurant Group Corp., they were not operational as corporations at the time of the 2022 dining season. Thus, neither of these corporations may bring suit for discrimination based on the 2022 season.
[5] The Court may also take judicial notice of the Secretary of the Commonwealth's Corporations Division's filing for Monica's Trattoria on Prince, which states that the restaurant is an incorporated business.

plaintiff and the corporation's injuries cannot be imputed to him.  Accordingly, Counts 1, 2, and 3 must be dismissed as to Patrick Mendoza, doing business as Monica's Trattoria on Prince.

**B.  Counts 1, 2, 3, and 4 Should Be Dismissed Because the Plaintiffs Do Not State a Claim Upon Which Relief Can be Granted in their Amended Complaint.**

**1.  The Plaintiffs' Equal Protection Claim Must be Dismissed Because the Plaintiffs Fail to Adequately Allege Facts to Support Such a Claim.**

The Equal Protection Clause of the Fourteenth Amendment prevents the government from denying to any person the equal protection of the laws.  U.S. Const. amend. XIV.  In order to invoke a heightened level of scrutiny under the Equal Protections Clause, the Plaintiffs must show that they were discriminated against on the basis of a suspect classification.  See e.g. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).  Without an inherently suspect characteristic or a government classification that prevents the exercise of a fundamental right, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."  Nordlinger v. Hahn, 505 U.S. 1, 10, (1992)

Here, the Plaintiffs have asserted that they were "forced to pay in order to have outdoor dining because of their sex or national origin/ethnicity"  Pl. Comp. ¶ 80.  Despite these assertions regarding a suspect classification, the Plaintiffs' complaint fails to provide an adequate basis for any heightened level of scrutiny related to a suspect characteristic or classification.

Without a suspect classification, the Plaintiffs' Equal Protection claim is presumably based upon the fact that the timing, fees, and parking requirements for on-street licenses in the North End are different than for other neighborhoods of Boston.  As a result, the Equal Protection Clause only requires that the classification be rationally related to a legitimate government interest.  City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).  The facts demonstrate that this distinction is rationally related to the City's interest in being able to manage the quality of life impacts of

expanding dining onto the public right of way.

a.     **The Plaintiffs Equal Protection Claim Does Not Merit Any Heightened Level of Scrutiny As (1) The Corporate Plaintiffs are not Alleged to be a Part of a Suspect Class and (2) Even As A Group, The Plaintiffs Did Not Allege Facts That Support Any Type Of Suspect Classification.**

(1) The Corporate Entities Are Not Alleged to Belong to Any Suspect Class.

A corporation is a "person" within the meaning of the Equal Protection clause.  See Metro. Life Ins. Co. v. Ward, 470 U.S. 869, 881 n. 9  (1985); see also W. & S. Life Ins. Co. v. State Bd. of Equalization of California, 451 U.S. 648, 660 n. 12 (1981).[6]  Notwithstanding this corporate personhood, a "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001).  Moreover, each corporation has a domicile under the laws of the state where it is incorporated versus where the owner may live.  See Cream of Wheat Co. v. Grand Forks Cnty., N.D., 253 U.S. 325, 40 (1920). Given that a corporate entity is distinct from a corporate owner, including as it pertains to domicile, it follows that a corporate owner's individual characteristics cannot be imputed to the corporation itself.  See Cedric Kushner Promotions, Ltd., 533 U.S. at 163.

In this case, the individual plaintiffs do not have standing to bring this suit as they have not suffered injuries beyond those suffered by the corporations.  Accordingly, the Plaintiffs' Equal Protection Clause claims are wholly based on the rights of the named corporations in this matter. The Plaintiffs have not identified any characteristics of these corporations that would lead to a

---

[6] Equal Protection cases for corporations often arise in the context of legislation that differentiates between foreign and domestic corporations.  See e.g. Am. Motorists Ins. Co. v. Starnes, 425 U.S. 637 (1976).  Similarly, there are cases that have arisen due to distinctions in legislation concerning the personal property of corporations versus the personal property of individuals. See e.g. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356 (1973).  Neither of these scenarios have resulted in a suspect classification for corporations.

designation of a suspect class and a heightened level of scrutiny under an Equal Protection Clause analysis.  As a result, the classification in this case, restaurants located in the North End, must only be rationally related to a legitimate government interest.

> (2) Even If Each of The Plaintiffs Had Standing in This Case, The Plaintiffs Have Not Demonstrated the Facts Necessary for An Inherently Suspect Class.

Strict Scrutiny, or a heightened level of scrutiny is not appropriate unless there is an inherent suspect classification.  See Plyler v. Doe, 457 U.S. 202, 216 (1982); see also San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 38 (1973).  In determining whether or not legislation impacts a class disproportionately, the analysis necessitates that the group at issue be similarly situated.  Consider City of Cleburne, Tex., 473 U.S. at 440. (noting that classifications based on race, national origin, or alienage are suspect).

In the instant case, the Plaintiffs assert that the City's requirement that all restaurants in the North End pay a fee for outdoor dining and for the parking spaces associated with outdoor dining is a violation of the Equal Protection Clause. Pl. Comp. ¶ 83.  It is axiomatic that these requirements apply to restaurants located in the North End neighborhood.  But, a corporate location in the North End neighborhood does not establish a suspect class.  The Plaintiffs further attempt to demonstrate a suspect class by stating that the City discriminated against the North End Restaurants because "common identity of a North End restaurateur is white, male and of Italian heritage," and that the City discriminated against "Italian-owned, North End restaurants," in requiring the fee.  Id. ¶¶ 79-83.  Yet these allegations are mere legal conclusions and do not provide a basis from which to establish that the "common identity" equates to an actual class of individuals and corporations bound by similar characteristics across the class.  The Plaintiffs do not state that all North End restaurants are owned by individuals who are "white, male, and of Italian-heritage."  Similarly, the Plaintiffs' allegation that the City discriminated against "Italian-owned, North End restaurants"

again only rises to the level of a legal conclusion and lacks any basis in fact.  The Plaintiffs have

put forth nothing to support their claim that <u>all</u> North End restaurants are owned by Italian owners

or individuals with Italian heritage.  Additionally, their claims fail as it pertains to individuals of

the same sex or the same race.  Accordingly, as there is no suspect classification or deprivation of

the exercise of a fundamental right, the analysis in this case only requires that the classification in

this case be rationally related to a legitimate government interest.

**b.    As the City's Actions Are Rationally-Related to a Legitimate Government Interest, the Plaintiffs' Equal Protection Claim Must be Dismissed.**

As the Plaintiffs have not alleged a suspect classification or a deprivation of their ability

to exercise a fundamental right, the Plaintiffs' Equal Protection claim is presumably based upon

the fact that the timing, fees, and parking requirements for on-street licenses in the North End

are different than for other neighborhoods of Boston. But because this distinction is rationally

related to the City's interest in being able to manage the quality of life impacts of expanding

dining onto the public right of way, the Plaintiffs' equal protection claim must be dismissed.

(1) <u>Plaintiffs Do Not Allege That They Are Being Treated Differently Than Similarly Situated Businesses.</u>

As a preliminary matter, "[w]hen a plaintiff alleges an equal protection violation

(without also alleging discrimination based upon membership in a protected class), the plaintiff

must plausibly allege that he or she has been intentionally treated differently from others

similarly situated and no rational basis exists for that different treatment." <u>Progressive Credit</u>

<u>Union v. City of New York</u>, 889 F.3d 40, 49 (2d Cir. 2018). "To succeed on such a claim,

plaintiffs 'must show an extremely high degree of similarity between themselves and the persons

to whom they compare themselves.'" <u>Id.</u> at 49 (quoting <u>Clubside v. Valentin</u>, 467 F.3d 144,

159 (2d Cir. 2006)).

In this case, the Plaintiffs have not alleged that they are similarly situated to restaurants in all other parts of Boston.  The Plaintiffs have only discussed the alleged similarities between Newbury Street and certain streets in the North End.  Pl. Comp ¶¶ 61-63. For example, the Plaintiffs allege that Newbury Street is "comparable in size and construction to Hanover Street in the North End in that Newbury Street also has two (2) lanes for vehicle traffic (although one-way)" and has "arguably, if not more, outdoor dining than Hanover Street in the North End." Id. Even in taking each of these facts as true, this comparison fails on its face.

First, the Plaintiffs' allegations revolve around discrimination against a neighborhood, yet the entirety of their analysis compares two streets in two different neighborhoods.  Without any additional information, the Court cannot extrapolate this information across the City of Boston or even these two distinct neighborhoods. Second,  , the Plaintiffs wholly fail to address how the location of a restaurant is relevant to the challenged regulatory distinction in this case. The distinction the City has drawn is based on location, and the operation of restaurants within the public right of way presents different challenges and impacts based on location. Because the Plaintiffs have not even alleged that the restaurants in other parts of Boston that   are   treated differently are  "similarly situated,"  the  claim  must  be  dismissed.  See Gianfrancesco v. Town  of Wrentham, 712  F.3d  634, 640 (1st Cir. 2013) (dismissing complaint that made no effort to establish how business treated differently from the plaintiff was similarly situated).

    (2) <u>The Regulation Is Rationally Related to The City's Interest in Managing The Impacts of On-Street Dining on Quality of Life in Its Neighborhoods.</u>

More fundamentally, the Equal Protection claim must be dismissed because the regulation is rationally related to the City's interest in managing the impacts that the temporary expansion of on-street dining has on quality of life. "[E]conomic legislation…that does not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack

when the legislative means are rationally related to a legitimate governmental purpose." Hodel v. Indiana, 452 U.S. 314, 331 (1981).  A plaintiff "not relying on typically impermissible bases for classification (e.g., race, religion, etc.) must show that it was 'intentionally treated differently from others similarly situated, that no rational basis exist[ed] for that difference in treatment, and the different treatment was based on a malicious or bad faith intent to injure.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (quoting Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006)).

In cases where a local economic regulation is challenged under the Equal Protection Clause of the U.S. Constitution, courts defer to legislative determinations as to the desirability of a particular regulation.[7] See Dukes, 427 U.S. at  303 (Local ordinance removing street vendors from the French Quarter, except those that had operated there for more than 8 years, was upheld where the ordinance rationally furthered the legitimate purpose of preserving the appearance and customs that were valued by residents and attractive to tourists). Correspondingly, local governments have wide latitude to regulate the local economy under their police powers and such rational distinctions may be made when regulating economic activity with less than mathematical certainty. See Dukes, 427 U.S. at 303, Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 982 (1st Cir. 1989) (noting that government does not violate Equal Protection merely because a classification created by its laws is imperfect). Furthermore, a local government does not need to achieve a complete elimination of a perceived evil through its regulatory scheme and may implement its programs step-by-step to partially ameliorate such evils.  See Dukes, 427 U.S. at 303; see also Medeiros v. Vincent, 431 F.3d 25, 31-32 (1st Cir.

---

[7]  Similarly, geographical distinctions, as the City has identified here as one of the bases for the regulatory scheme, usually require only a rational basis review.  See Walsh v. Commonwealth of Massachusetts, 618 F.2d 156, 158 (1st Cir. 1980); Residents for Sane Trash Solutions, Inc. v. U.S. ACE, 31 F. Supp. 3d 571, 596-97 (S.D.N.Y. 2014)

2005) ("a statute or regulation is not lacking in a rational basis simply because it addresses a broader problem in small or incremental stages").

When applying a rational basis standard to a local economic regulation, the Court must uphold it "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). See also Montalvo-Huertas, 885 F.2d at 978 ("Under the rational basis test, duly enacted socioeconomic legislation should be upheld so long as *any* set of facts could suffice to establish a rational relationship between the law and the government's legitimate objectives"). The local government's actual reason for adopting a certain economic regulation is "constitutionally irrelevant" when conducting rational basis review so long as there is some conceivable basis supporting any purported government interest. See Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 49 n. 8 (1st Cir. 2003) (quoting U.S. R.R. Retirement Board v. Fritz, 449 U.S. 166, 179 (1980)). Thus, in the instant case, the City may propose any possible basis for its economic regulation at the motion to dismiss stage without the need for further fact-finding so long as such conceived purpose serves any potential government interest.

Here, it is conceivable that the City sought to defray its mitigation costs and to replace lost resident parking caused by restaurants extending their premises into the public right of way in that portion of the City where the extension of premises most greatly impacted quality of life and operation of the streets. The City further determined that such a fee and replacement parking requirements would be rationally related to the City's legitimate interests in regulating the public right of way and protecting the public health and safety and quality of life in a unique area of the City with a dense concentration of restaurants. It is conceivable that the extension of licensed premises into the public right of way eliminates resident parking relied on by residents to navigate

their daily lives, creates increased trash, traffic, and rodent problems that the community must either tolerate or pay to mitigate, and increase costs to the City such as redoing street markings, increasing licensing enforcement where capacity has increased, cleaning streets and sidewalks, rodent control, and parking enforcement. It is also reasonably conceivable that the North End has significantly more restaurants seeking to operate in the public right of way than any other neighborhood, in both absolute terms as well as in proportion to the population and geographic size of the neighborhoods; that the North End is characterized by narrow sidewalks and high pedestrian volume that makes on-street dining particularly impactful on pedestrians; that the North End has narrow streets that will be significantly impacted by the placement of dining patios in the street; and that on-street dining in the North End occupies a significantly larger proportion of on-street residential parking spaces than in any other neighborhood.

It is reasonably conceivable that the collective impacts of temporary license expansion in the North End poses a significant quality of life burden in the form of aggregate noise, trash, traffic, difficulty of pedestrians navigating sidewalks, and parking loss that is different in magnitude and kind than experienced in other neighborhoods. In light of such a "reasonably conceivable state of facts," the City could have rationally chosen to regulate restaurants seeking to expand into the public right of way in the North End differently than it regulated restaurants in other areas that did not pose the same collective impacts on quality of life. Making the regulations address the direct residential parking impacts and charging a fee to permit the government to provide additional services to ameliorate the impact that on-street dining in the North End has is rationally related to the City's interest in ensuring that the expansion of private businesses onto the public right of way does not overwhelm the quality of life in any neighborhood. It is no bar to dismissal that the distinction drawn by the regulation might not be "made with mathematical

nicety," <u>Dandridge v. Williams</u>, 397 U.S. 471, 485 (1970), nor that the City may be taking a piecemeal approach as it assesses the impacts of outdoor dining in the public way and might later choose to tackle quality of life impacts in other neighborhoods as opposed to attempting to address the impacts on every neighborhood all at once, <u>see</u> <u>Williamson v. Lee Optical of Okla., Inc.</u>, 348 U.S. 483, 489 (1955); <u>see also</u> <u>Two Guys From Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 591 (1961)</u> (holding it was within the power of the legislature to decide to regulate only certain businesses that were particularly disruptive).  Accordingly, as Plaintiffs have failed to state an Equal Protection violation, Count 2 must be dismissed.

2.    **The Plaintiffs' Due Process Claims Should Be Dismissed Because They Have Neither Demonstrated a Violation of Substantive Due Process nor Procedural Due Process.**

The Due Process Clause prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The Due Process Clause has both a substantive and procedural component.  <u>See</u> <u>Pagán</u>, 448 F.3d at 32 .  The substantive component "functions to protect individuals from particularly offensive actions on the part of government officials even when the government employs facially neutral procedures in carrying out those actions." <u>Id.</u> at 32.  The procedural component protects against deprivation of protected liberty or property interests without a "constitutionally adequate process." <u>González-Droz v. González-Colón</u>, 660 F.3d 1, 13 (1st Cir. 2011).  In their Amended Complaint, the Plaintiffs assert that both their substantive and procedural due process rights were violated.[8]  Both claims fail as a matter of law.  Accordingly, this Court should dismiss Count 1 for failing to state a claim upon which relief can be granted.

---

[8] At the October 2022 hearing, Counsel for the Plaintiffs indicated he was moving forward on a substantive due process claim. In their Amended Complaint, Plaintiffs have asserted both rights anew.

a. **The Plaintiffs' Substantive Due Process Claim Fails as the Plaintiffs Have Not Demonstrated that the City's Actions Violated a Fundamental Right.**

The protections of substantive due process attach only to (1) conduct that "shocks the conscience;" and (2) conduct that violates a fundamental right—a right implicit in the concept of ordered liberty. United States v. Salerno, 481 U.S. 739, 746 (1987). Courts have recognized the shock-the conscience standard as a violation of personal rights "so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010). Further, as not all rights qualify as fundamental rights within the meaning of substantive due process protections, the Plaintiffs must identify the fundamental right upon which they claim the government has infringed. See Washington v. Glucksberg, 521 U.S. 702, 703 (1997) (noting that not "all important, intimate, and personal decisions" qualify as fundamental liberty interest under the Due Process clause ).[9]

Here, the Plaintiffs claim that their substantive due process rights were infringed upon when:

> [Mayor Wu] failed to provide the discriminatory information, they were not included or informed throughout the defining process and intentionally barred from asserting their complaints and concerns at the Defendant's meeting that was held to specifically discuss the North End outdoor dining rules, fees and the times and dates for outdoor dining.

Pl. Comp. ¶70.[10]  None of these points implicate any fundamental right within the meaning of

---

[9] The two notable features of a substantive due process analysis are: (1) the Supreme Court "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition;" and (2) the fundamental liberty interest requires a "careful description." Washington v. Glucksberg, 521 U.S. 702, 703 (1997).

[10] Within their claim of a violation of due process, the Plaintiffs also claim that they had a right to complain about

<u>Glucksberg</u>.   There is no fundamental right to operate a restaurant and there is certainly no fundamental right to extend that restaurant into the public right of way.   See <u>Mulero-Carrillo v. Roman-Hernandez</u>, 790 F.3d 99, 107 (1st Cir. 2015) (Plaintiffs did not allege that obtaining a license to practice medicine was a fundamental right); see also <u>Medeiros v. Vincent</u>, 431 F. 3d 25, 32 (1st. Cir. 2005) ("The 'right to make a living' is not a 'fundamental right' for either equal protection or substantive due process purposes").   Accordingly, as the Plaintiffs have failed to identify a fundamental right that requires a heightened level of scrutiny, their claims regarding the City's actions must be evaluated under a rational basis standard.

In the alternative, even if the Plaintiffs had identified a violation of a fundamental right, the City's actions in this case cannot be seen as "truly outrageous, uncivilized, and intolerable," <u>Harron</u>, 660 F.3d at 536 (asserting that while there is no scientific formula for what shocks the conscience, past principles have included executive acts characterized as "outrageous."). Indeed, the First Circuit has previously noted that the "any permit or license denial, no matter how unattractive, that falls short of being 'truly horrendous' is unlikely to qualify as conscience-shocking." <u>Id</u>.   Here, the City engaged in a regulatory scheme in order to meet the needs of a community while still permitting outdoor dining.   To classify the dining fee as "horrendous" or "truly outrageous" would be beyond the pale.   As a result, the Plaintiffs are not entitled to any heightened level of scrutiny in this case.

The analysis of a substantive due process claim where no fundamental right is implicated is rational basis review.   See <u>Montalvo-Huertas</u>, 885 F.2d 971, 976 at n.7 (1st Cir. 1989).

---

the fees under the First Amendment.  Pl. Comp. ¶ 69.  It is unclear whether or not the Plaintiffs intended this allegation to be a component of their due process claim, but nonetheless, this proposition is improper in any event. government actors, individuals seeking redress ... must assert their claims under that particular constitutional rubric instead of invoking the more generalized notion of substantive due process. <u>Pagán v. Calderón</u>, 448 F.3d 16, 33 (1st Cir. 2006).

Furthermore, where the court must apply the same standard of rationality in both equal protection and substantive due process claims, the claims will be analyzed in substantially the same manner. See Id..; see also Pearson v. Fair, 935 F.2d 401, 411 n. 18 (1st Cir. 1991) (holding that it was unnecessary to address substantive due process claims at any length where the standard of constitutionality is identical to the rationality standard employed in equal protection analysis).

In this case, the Plaintiffs failed to allege facts that implicate a violation of a fundamental right. As there exists no fundamental right to operate a restaurant and there is certainly no fundamental right to extend that restaurant onto the public right of way. Consider Mulero-Carrillo, 790 F.3d at 107. As discussed, the City's economic regulation of North End restaurants operating in the public right of way is rationally related to the City's interests in regulating its right of way, protecting public health and safety, mitigating negative quality of life impacts, and preserving the appearance and character of the North End that are valued by residents and tourists alike. Where such conceivable rational basis exists along with the high level of deference provided to legislative determinations, the Plaintiffs' substantive due process claim fails as a matter of law.

**b.    The Plaintiffs' Procedural Due Process Claim Fails as The Plaintiffs Have Not Identified a Liberty or Property Interest Infringed Upon by the City.**

To proceed on a procedural due process claim, Plaintiffs must "identify a protected liberty or property interest and allege that the defendants, acting under state law, deprived [them] of that interest without constitutionally adequate process." Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014). However, the range of these interests is not infinite. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570 (1972). Indeed, a protected property interest exists when one has a legitimate claim of entitlement to a right arising from such sources as state statutes, local ordinances, and employment contracts. Id. at 576.

In their Amended Complaint, the Plaintiffs fail to identify any property interest that would

implicate procedural due process protections.  No local ordinance, state statute, or federal law protects Plaintiffs' interests in extending a private business beyond its existing, licensed premises to exclusively occupy a portion of the public right of way.  In addition, the Plaintiffs did not allege that the City's actions deprive them from conducting their business operations in a manner consistent with their existing licenses, the interest at issue in this case.  Without these two components, the Plaintiffs cannot demonstrate that a right to a hearing is paramount.  See Bd. of Regents of State Colls,  408 U.S. at 569. As the Plaintiffs failed to allege that the City deprived them of a protected property interest in this case, the Plaintiffs' procedural due process claim must be dismissed.

Moreover, any procedural due process claim in this case fails because the City's regulation is a rule of general application that is not subject to the notice and hearing requirements of the Due Process Clause. The Supreme Court has long drawn a distinction between "proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases, on the other." United States v. Fla. E. Coast Ry. Co., 410 U.S. 224, 245 (1973). Like statutes, local governmental orders, rules, and regulations are typically legislative in nature because they adopt general rules that are not aimed at particular cases or parties.  See e.g. Gallo v. U.S. Dist. Ct. for the Dist. of Arizona, 349 F.3d 1168, 1182-83 (9th Cir. 2003) (court rules that changed attorney licensing requirements are legislative in nature); RR Vill. Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1204-05 (2d Cir. 1987) (citing Minnesota State Board for Community Colleges v. Knight, 465 U.S. 271, 284 (1984), for the proposition that a "policy decision by [an] executive agency would be legislative action"). Referring back to its decision in Bi-Metallic Investment Co. v. State Board of Equalization, the Court has held that "[w]here a rule of conduct applies to

more than a few people, it is impracticable that everyone should have a direct voice in its adoption." Bi-Metallic Investment Co. v. State Board of Equalization 239 U.S. 441, 445 (1915). In this legislative context, individual due process rights—including notice and a right to be heard—do not attach.  See id. at 445-46. Here, the City's regulation is legislative in nature because it promulgates a policy that serves the City and applies to multiple businesses based on districts. Accordingly, the Plaintiffs do not have any individual procedural due process rights. Thus, this Court should dismiss Count 1.

3.    **The Plaintiffs' Commerce Clause Claim Should Be Dismissed as the Plaintiffs Fail to Demonstrate Any Incidental Burden on Interstate Commerce.**

A government regulation only triggers scrutiny under the Commerce Clause when : (1) the regulation affirmatively discriminates, either on its face or in practical effect, against transactions in interstate commerce; or (2) the regulation regulates evenhandedly but incidentally burdens interstate transactions. See Maine v. Taylor, 477 U.S. 131, 138 (1986). Regulations of the second type are upheld so long as the burdens imposed on interstate trade are not clearly excessive in relation to the putative local benefits. Id.

Since the City's regulation clearly does not affect interstate commerce on its face, the City surmises that Plaintiffs are suggesting that there is some incidental burden on interstate commerce. This theory of liability is grasping at straws. Plaintiffs allege that if they did not pay the outdoor dining fee they would not be able to compete with the restaurants that paid to participate. See Pl. Comp. ¶¶ 65-66. However, the mere fact that some of their lost patrons may have been tourists from other states does not plausibly state a claim for even an incidental burden on interstate commerce.  There are no allegations that out-of-state diners were treated differently than Massachusetts diners, even incidentally.  Moreover, the Plaintiffs' claims that their vendors may be affected because of the shortened outdoor dining period for the North End is simply a

legal conclusion based on speculation, rather than a statement that holds any basis in fact.  See Id. at ¶ 89.  Without anything additional beyond their mere speculation, the Plaintiffs have failed to establish any plausible facts suggesting an incidental burden on interstate commerce.

However, even assuming arguendo that these allegations could, somehow, allege an incidental burden on interstate commerce, there has been no Commerce Clause violation because any burden was not "clearly excessive" in light of the local benefits. See Taylor, 477 U.S. at 138. Whether a burden is "clearly excessive" depends on "the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Id. Here, the local benefits of the fee included defraying the costs associated with lost parking, rodent control, licensing enforcement (where licensed premises have increased serving capacity), street cleaning, and parking enforcement. It is impossible to discern how these benefits could have been promoted with a "lesser impact on interstate activities" when, again, Plaintiffs have not alleged any impact—even incidental—on interstate activities. In the absence of any plausible allegations as to how the Order affected interstate commerce, the Plaintiffs cannot demonstrate how the Order imposed burdens on interstate commerce that were "clearly excessive". Accordingly, Plaintiffs' Commerce Clause claim fails as a matter of law. [11]

---

[11] In the alternative, if the Mayor were to be sued her individual capacity, Mayor Wu would have qualified immunity against any damages claims arising from Counts 1, 2, and 3.  The First Circuit applies a "three-step algorithm for the determination of whether a state actor is entitled to qualified immunity."  Pagán, 448 F.3d 16.  "[W]e consider (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right."  Id. (quoting Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004)).  The focus is not on the "abstract constitutional rights," but the "specific facts" of "the particular conduct engaged in by (or attributed to) the defendants."  Rivera-Ramos v. Roman, 156 F.3d 276, 279-80 (1st Cir. 1998).

Regarding Counts 1 and 2, allegations of violations of Due Process and the Equal Protection Clause, the City has clearly established that there has been no violation of any fundamental right.  There is no fundamental right to operate your business within the public right-of-way.  See Mulero-Carrillo, 790 F.3d at 107 (Plaintiffs did not allege that obtaining a license to practice medicine was a fundamental right; see also Medeiros, 431 F. 3d at 32 (1st Cir. 2005) Indeed, there is no fundamental right to "making a living." Id.  Even taken each of the Plaintiffs' allegations as true, the Plaintiffs have not established that they are entitled to any heightened level of scrutiny.  For each of these allegations, the Plaintiffs are at most entitled to a rational basis review of their claims.  Given the facts alleged in the

**4.**      **As the Plaintiffs Have Failed to Establish That the City Was Engaged in Trade or Commerce, their M.G.L 93A s. 2 Claim Must Be Dismissed.**

In Count 4 of their Complaint, the Plaintiffs seek to avoid application of the regulatory scheme for licensing outdoor dining establishments in the North End by transforming the matter into a M.G.L. c. 93A claim. The Plaintiffs claim that they are entitled to relief under c. 93A, § 2, because the City's actions "set up 'unfair methods of competition' and/or are 'unfair or deceptive practices' in 'commerce' in violation of M.G.L. c. 93A". Pl. Compl. ¶ 91. To succeed on this claim, the Plaintiff will need to prove, among other things, that the City engaged in an "unfair or deceptive act or practice," and that it did so in the conduct of "trade or commerce." G.L. c. 93A, § 11. Count 4 must be dismissed because the Plaintiff has not sufficiently alleged that the City was engaged in trade or commerce.

The Plaintiffs' c. 93A claim should be dismissed because the Plaintiffs have not alleged facts which plausibly allege that the City was engaged in "trade or commerce," which is a requisite for liability under G. L. c. 93A, § 11. Massachusetts courts have not conclusively determined whether a claim under c. 93A can be brought against a municipality.   See Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 86 (2004); City of Beverly v. Bass River Golf Mgmt., Inc., 92 Mass. App. Ct. 595, 605 (2018); M. O'Connor Contracting, Inc. v. Brockton, 61 Mass. App. Ct. 278, 284  n.8 (2004). Regardless, a plaintiff claiming that a municipality violated c. 93A must

---

Amended Complaint, no official similarly situated to Mayor Wu would have understood these allegations to shock the conscience or to violate rational basis review.  As a result, Mayor Wu is entitled to qualified immunity on any damages claim pertaining to the alleged Due Process claim and the Equal Protection claim.

In addition, Mayor Wu is also entitled to qualified immunity on Count 3, the Commerce Clause claim.  No reasonable official would not have understood the regulatory scheme to violate the dormant commerce clause.  Again, evenhanded regulation is permissible, even if it incidentally burdens interstate commerce, so long as the burden is not "clearly excessive" in light of the local benefits.  See Taylor, 477 U.S. at 138  Here, the burden was at most very slight, and the rules addressed salient local quality-of-life issues.  Any reasonable official would have understood that ordinary time-and-place regulation of local businesses to address local quality-of-life issues was permissible. Cf. Starlight Sugar, Inc. v. Soto, 253 F.3d 137 (1st Cir. 2001) (where "the applicability of the dormant Commerce Clause to [the government] is disputed … appellees' attendant constitutional right [wa]s not clearly established").   As a result, Mayor Wu is entitled to qualified immunity for any claim for damages related to Count 3, the Commerce Clause claim.

demonstrate that the municipality was "acting in a business context," meaning that it was engaged in "trade or commerce," as a threshold requirement for recovery.  Bass River Golf Mgmt., 92 Mass. App. Ct. 595, 605 (2018) (quoting Park Drive Towing, 442 Mass. at 86).

When the municipality's conduct constitutes governmental activity, the municipality is protected from liability under c. 93A because "it is well-established that governmental entities are not amenable to suit under c. 93A when they have engaged in governmental activity rather than trade or commerce." M. O'Connor Contracting, 61 Mass. App. Ct. at 284.

No Massachusetts appellate court has found a city to have engaged in trade or commerce under c. 93A, but the many cases that determine that a municipality was not so engaged make it entirely clear that the Plaintiffs have not plausibly alleged that the City engaged in trade or commerce in this case by imposing a fee on restaurants seeking licenses to expand their licensed restaurant premises onto the public way in the North End. To qualify as trade or commerce, conduct must take place in a "business context," which is determined by considering "the nature of the transaction, the character of the parties involved and [their] activities ... and whether the transaction [was] motivated by business ... reasons." Park Drive Towing, 442 Mass. at 86 (quoting Boston Hous. Authy. v. Howard, 427 Mass. 537, 538 (1998)); All Seasons Servs., Inc. v. Commissioner of Health and Hospitals of Boston, 416 Mass. 269, 271 (1993).  Applying those considerations in the municipal context, the Supreme Judicial Court has adhered to a principle that a municipality is not engaged in trade or commerce where the municipality does not seek to profit from a transaction and where the contract is part of or incidental to its ordinary municipal activities.  Howard, 427 Mass. at 539-40 (holding that the Boston Housing Authority was not engaged in trade or commerce when it rented an apartment to the defendant resident). Thus, the appellate courts repeatedly find that actions by municipalities have not occurred in a business

context.

For example, when the Boston City Hospital granted a vending machine company the exclusive right to operate food vending machines in the hospital, the court held that the hospital was not engaged in trade or commerce because it was not seeking to make a profit and the contract was merely incidental to its primary function of providing medical services.   See All Seasons Servs., 416 Mass. at 271. Where a claim arose from a city's contracting for the construction of a municipal building, the claim arose from a "governmental function" and was not amenable to c. 93A.  M. O'Connor Contracting, 61 Mass. App. Ct. at 284–85. In another case where a city allegedly terminated a contract to tow illegally parked cars, the SJC rejected a c. 93A claim because the transaction was "merely incidental to [the city's] primary function of maintaining order in the streets." Park Drive Towing, 442 Mass. at 86.  Even running a lottery to generate revenue is not acting in the business context when the revenue goes to the state and the lottery is operated at legislative mandate rather than personal or business objectives. Bretton v. State Lottery Commn., 41 Mass. App. Ct. 736, 739–40 (1996).

Although no Massachusetts court has held that a municipality was engaged in trade or commerce for the purposes of c. 93A, the City acknowledges that the United States District Court for the District of Massachusetts so found in a 2006 decision.  City of Revere v. Boston/Logan Airport Associates, LLC., 443 F. Supp. 2d 121, 129 (D. Mass. 2006).   In that case the court determined that the City of Revere had acted in a business context when it sought to enforce an easement on a piece of property that it had acquired through a tax taking because that action would allow it to secure more money for the sale of the property than it would otherwise obtain if it did not enforce the easement against the plaintiff. Id. The present case is readily distinguishable because the City of Revere was looking to increase its profits from a land transaction.

Here, the City of Boston is performing a primary governmental function of operating a regulatory scheme for licensing temporary licensed premises extensions.[12] The City of Revere decision seeks to distinguish the long line of Massachusetts cases that have found that a city was not engaged in trade or commerce by suggesting that those cases involved clearer statutory mandates, transactions more clearly related to a municipality's primary functions, or less profit. In the context of the instant case, cities have a statutory mandate to regulate economic activity, and more specifically, to regulate outdoor dining on City streets, and an examination of binding Massachusetts precedent supports a conclusion that dismissal of Count 4 is appropriate, especially given the governmental purpose at issue here.

## IV.    CONCLUSION

For the foregoing reasons, the City respectfully requests that this Honorable Court grant its Motion to Dismiss for all of the counts against the City with prejudice.

---

[12] Merely stating that the City's requirement of a "license to have outdoor dining can be held to be a quasi-contract," does not support that the City engaged in trade or commerce. Pl. Comp.   ¶ 94.   Violation of a purported contract, alone, does not amount to a violation of c. 93A. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100–101 (1979). Instead, "conduct 'in disregard of known contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." Anthony's Pier Four v. HBC Associates, 411 Mass.451, 474 (1991) (quoting Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986)) The facts here do not support that there was a contract or a quasi-contract that resulted in unjust enrichment.  Instead, the facts demonstrate that the City's actions were based on a legislative mandate and maintaining regulation of its public way which falls squarely within the range of government activity.   Compare Max-Planck-Gesellschaft Zur Foerderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Rsch., 850 F. Supp. 2d 317, 328 (D. Mass. 2011) .  The Plaintiffs' argument that the City made a business decision to "steer" business patrons away from the North End is putting old wine in a new bottle.

Date:  January 6, 2023                    Respectfully submitted,

                                          **MAYOR MICHELLE WU**

                                          By her attorneys:

                                          ADAM CEDERBAUM
                                          Corporation Counsel


                                          */s/ Samantha Fuchs*
                                          Samantha Fuchs (BBO# 708216)
                                          Assistant Corporation Counsel
                                          City of Boston Law Department
                                          City Hall, Room 615
                                          Boston, MA 02201
                                          (617) 635-4034
                                          Samantha.Fuchs@boston.gov


Certificate of Service

I, Samantha Fuchs, hereby certify that on January 6, 2023, I filed a true and correct copy
of this document through the ECF system to counsel for the Plaintiffs, Richard Chambers.

                                          */s/  Samantha Fuchs*
                                          Samantha Fuchs